**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

Sinae Moon, Jeonghee Lee, and Hyun S. Kim,

Plaintiffs,

- against –

Birch Nails & Spa Inc d/b/a Birch Hill Nails, Birch Hill
Nails, Inc. d/b/a Birch Hill Nails, and Young Suk Kim a/k/a
Jennifer,

Defendants.

Case No.

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs Sinae Moon, Jeonghee Lee, and Hyun S. Kim, ("Plaintiffs"), by and through their
attorneys, Seo Law Group, PLLC, upon their knowledge and belief, and as against Birch Nails &
Spa Inc d/b/a Birch Hill Nails and Birch Hill Nails, Inc. d/b/a Birch Hill Nails ("Birch Nails" or
"Corporate Defendants"), Young Suk Kim a/k/a Jennifer ("Individual Defendant") (collectively,
"Defendants"), respectfully allege as follows:

<u>**NATURE OF THE ACTION**</u>

1.       This action seeks to recover unpaid minimum wages, overtime pay, and other
monies pursuant to the Fair Labor Standards Act, 29 U.S.C.  § 201 *et seq*. ("FLSA"), the New
York Labor Law §190, *et seq*. ("NYLL") on behalf of Plaintiffs for various willful and unlawful
employment policies, patterns, and/or practices.

2.       Plaintiffs Sinae Moon and Jeonghee Lee bring additional claims for violations of
the New York Human Rights Law ("NYHRL") arising from a hostile work environment created
by Defendant Young Suk Kim a/k/a Jennifer.

3.       Plaintiffs Sinae Moon and Jeonghee Lee further bring claim for Defendant Young
Suk Kim a/k/a Jennifer's retaliatory conduct in violation of the NYLL § 740.

4.      Birch Nails operates as a nail salon that offers manicure and pedicure services as well as massage and facial care services to its customers.

5.      Birch Nails paid Plaintiffs pursuant to a similar, if not the same, compensation structure.

6.      Defendants classified Plaintiffs as non-exempt from overtime.

7.      Plaintiffs worked broadly as "nail technician" and were assigned various tasks such as taking care of customers' nails and toenails by clipping nails, giving massages, applying nail polish or other nail art based on the customers' needs and preferences, as well as performing various tasks at the will and pleasure of the employer to accomplish tasks as the employer saw fit from day to day such as cleaning the Birch Nails business site including the bathroom and washing other business inventory.

## JURISDICTION AND VENUE

8.      This Court has original federal question jurisdiction over this controversy under 29 U.S.C. § 216(b), 28 U.S.C. § 1331, and has supplemental jurisdiction over the New York Labor Law claims pursuant to 28 U.S.C. § 1367(a).

9.      Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate Nail Salon(s) located in this district. Further, Plaintiffs were employed by Defendants in this district.

## THE PARTIES

### *Plaintiffs*

***Plaintiff Sinae Moon ("Plaintiff Moon")***

10.     Plaintiff Sinae Moon (hereafter, "Plaintiff Moon") is an adult individual residing in Queens County, New York.

11.     Plaintiff Moon was employed by Defendants at Birch Nails as a nail technician from on or about October 9, 2020 until on or about July 30, 2022.

12.     Plaintiff Moon consents to being a party plaintiff pursuant to 29 U.S.C. § 216(b).

13.     The consent to sue form for the Plaintiff Moon is attached hereto as Exhibit 1.

***Plaintiff Jeonghee Lee ("Plaintiff Lee")***

14.     Plaintiff Jeonghee Lee (hereafter, "Plaintiff Lee") is an adult individual residing in Queens County, New York.

15.     Plaintiff Lee was employed by Defendants at Birch Nails as a nail technician from on or about April 3, 2018 until on or about December 24, 2021.

16.     Plaintiff Lee consents to being a party plaintiff pursuant to 29 U.S.C. § 216(b).

17.     The consent to sue form for the Plaintiff Lee is attached hereto as Exhibit 2.

***Plaintiff Hyun S. Kim ("Plaintiff Kim")***

18.     Plaintiff Hyun S. Kim (hereafter, "Plaintiff Kim") is an adult individual residing in Queens County, New York.

19.     Plaintiff Kim was employed by Defendants at Birch Nails as a nail technician from on or about June 3, 2021 until on or about July 28, 2022.

20.     Plaintiff Kim consents to being a party plaintiff pursuant to 29 U.S.C. § 216(b).

21.     The consent to sue form for the Plaintiff Kim is attached hereto as Exhibit 3.

## CORPORATE DEFENDANTS

***Birch Nails & Spa Inc*** (*is believed to be a parent/successor corporation of Birch Hill Nails, Inc. or a joint employer with Birch Hill Nails, Inc. or both*)

22. The Corporate Defendant, Birch Nails & Spa Inc, is a domestic business corporation and existing under the laws of the State of New York with a Service of Process address at 89 Birch Hill Rd, Locust Valley, NY, United States, 11560 in the New York Department of State record.

23. Corporate Defendant, Birch Nails & Spa Inc operated and/or operates a nail salon located at 89 Birch Hill Rd, Locust Valley, NY 11560.

24. Upon information and belief, Birch Nails & Spa Inc was incorporated on August 9, 2019.

25. Upon information and belief, Birch Nails & Spa Inc, is either the successor corporation of Birch Hill Nails, Inc. or was a co-operator of Birch Nails located at 89 Birch Hill Rd, Locust Valley, NY 11560, together with Birch Nails & Spa Inc.

26. Upon information and belief, Birch Nails & Spa Inc is at present and has been at all times relevant to the allegations in this Complaint been an enterprise engaged in interstate commerce within the meaning of the Fair Labor Standards Act ("FLSA"), 29 U.S.C § 203(b) in that it has and has had employees engaged in interstate commerce or in production of goods for interstate commerce as well as handle, sell, or otherwise work on goods or materials that have been moved in or produced for interstate commerce by any person; and they have each had annual gross volume sales of not less than $500,000.

27. Birch Nails & Spa Inc is an "employer" within the meaning of the FLSA 29 U.S.C § 203 (d) and the New York State Labor Law ("NYLL") § 2, 190, and/or 651 that runs and profits from a business operation as a nail salon located at 89 Birch Hill Rd, Locust Valley, NY 11560.

***Birch Hill Nails, Inc.***

28.     Upon information and belief, Defendant Birch Hill Nails, Inc. is a domestic "inactive" business corporation as of December 12, 2019, that was previously existing under the laws of the State of New York with Service of Process address at 89 Birch Hill Rd, Locust Valley, NY, United States, 11560.

29.     Upon information and belief, Birch Hill Nails, Inc. operated/operates a nail salon at the principal place of business located at 89 Birch Hill Rd, Locust Valley, NY 11560.

30.     Upon information and belief, Defendant, Birch Hill Nails, Inc., is either the predecessor corporation of Birch Nails & Spa Inc or is/was a co-operator of Birch Nails & Spa Inc located at 89 Birch Hill Rd, Locust Valley, NY 11560, together with Birch Nails & Spa Inc at the same business location.

31.     Upon information and belief, Birch Hill Nails, Inc. is presently "inactive" but was, at times relevant to the allegations in this Complaint, an enterprise engaged in interstate commerce within the meaning of the Fair Labor Standards Act ("FLSA"), 29 U.S.C § 203(b) in that it has and has had employees engaged in interstate commerce or in production of goods for interstate commerce as well as handle, sell, or otherwise work on goods or materials that have been moved in or produced for interstate commerce by any person; and they have each had annual gross volume sales of not less than $500,000.

32.     Birch Hill Nails, Inc. is an "employer" within the meaning of the FLSA 29 U.S.C § 203 (d) and the New York State Labor Law ("NYLL") § 2, 190, and/or 651 that runs and profits from a business operation as a nail salon based at 89 Birch Hill Rd, Locust Valley, NY 11560.

## INDIVIDUAL DEFENDANTS

***Defendant Young Suk Kim*** a/k/a Jennifer ***("Defendant Jennifer")***

33.     Upon information and belief, Defendant *Young Suk Kim* a/k/a Jennifer (hereafter, "Defendant Jennifer") is an individual who has been the de facto and de jure owner, officer and/or agent of Defendant Corporations during the relevant time period, and she is sued individually. Defendant Jennifer has possessed and exercised operational control over Defendant Corporations, for example, she has at times relevant to this litigation determined the wages and compensation of Defendants' employees, including Plaintiffs, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees. In particular, Defendant Jennifer has a prominent role in the setting of salaries for Corporate Defendants' employees and hires and fires Corporate Defendants' employees.

34.     Upon information and belief, Defendant Jennifer has ownership interest in the Corporate Defendants, and she is a manager and supervisor of all her employees and the employees of the Corporate Defendants.

35.     Upon information and belief, Defendant Jennifer was and/or is CEO and sole operator of Birch Hill Nails, Inc. at 89 Birch Hill Rd, Locust Valley, NY 11560 since in or around 2018.

36.     Upon information and belief, Defendant Jennifer is the Founder and CEO of Birch Nails & Spa Inc. located at 89 Birch Hill Rd, Locust Valley, NY 11560.

37.     Defendant Jennifer is known to Plaintiffs as the "owner" of Birch Nails.

38.     Upon information and belief, Defendant Jennifer manages all aspects of the Corporate Defendants' finances including handling their employees' payrolls.

39.     Upon information and belief, Defendant Jennifer is the signatory of the Corporate Defendants Birch Nails' business account(s).

40.    Plaintiffs were "employees" of Individual Defendant, Jennifer, within the meaning of 29 U.S.C § 203 (e)(1) and NYLL § 190(2).

41.    Plaintiffs were "employees" of Corporate Defendants, Birch Nails, within the meaning of 29 U.S.C § 203 (e)(1) and NYLL § 190(2).

42.    Defendant Jennifer, and Corporate Defendants through Individual Defendant controlled the hours, the task assignments and the overall work associated with Plaintiffs' work at the business premise of Birch Nails.

43.    Defendant Jennifer, and Corporate Defendants through Individual Defendant, controlled the terms and conditions of Plaintiffs' employment and are thus "employers" within the meaning of 29 U.S.C. § 203(d) and NYLL § 190(3).

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

44.    Defendants operate a nail salon(s) where the Plaintiffs worked. At all relevant times, Individual Defendant Jennifer possesses or possessed operational control over Corporate Defendants; possesses or possessed an ownership interest in Corporate Defendants; and controls or controlled significant functions of Corporate Defendants.

45.    Corporate Defendants and Individual Defendant are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

46.    At relevant times, each Corporate Defendant possessed substantial control over Plaintiffs' working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs referred to herein.

47.     Corporate Defendants jointly employed Plaintiffs and are Plaintiffs' and all employers within the meaning of 29 U.S.C. 201 et seq. and the NYLL.

48.     In the alternative, Corporate Defendants constitute a single employer of Plaintiffs, as the corporate divisions between them are fictional.

49.     Upon information and belief, Individual Defendant operates Corporate Defendants as either an alter ego of themselves and/or fail to operate Defendant Corporations as an entity legally separate and apart from themselves, by among other things:

   a.   failing to adhere to the corporate formalities necessary to operate Corporate Defendant(s) as a Corporation(s);

   b.   defectively forming or maintaining the corporate entity of Corporate Defendant(s), by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records;

   c.   transferring assets and debts freely as between all Defendants;

   d.   operating Corporate Defendant(s) for her own benefit as the sole or majority shareholders;

   e.   operating Corporation Defendant(s) for her own benefit and maintaining control over this corporation(s) as a closed corporation(s);

   f.   intermingling assets and debts of her own with Corporate Defendant(s);

   g.   diminishing and/or transferring assets of Corporate Defendant(s) to avoid full liability as necessary to protect their own interests, and

   h.   Other actions evincing a failure to adhere to the corporate form.

50.     At all relevant times, Individual Defendant was Plaintiffs' employer within the meaning of the FLSA, NYLL and other law.

51.     Individual Defendant had the power to hire and fire Plaintiffs, control the terms and conditions of employment, and determine the rate and method of any compensation in exchange for Plaintiffs' services.

52.     Individual Defendant supervised Plaintiffs' work schedules and conditions of their employment.

53.     Individual Defendant also determined the rate and method of payment for Plaintiffs.

54.     Individual Defendant also controlled and guided what limited recordkeeping that took place which Plaintiffs contend is deficient pursuant to FLSA and NYLL requirements.

### ***Plaintiffs Moon, Lee, and Kim  ("Plaintiffs")***

55.     Plaintiffs are former employees of Defendants, primarily employed in performing the duties as nail technician, but were also responsible for performing various other tasks, such cleaning the business site, organizing business inventory, setting out trash, washing and folding towels, cleaning nail files, gloves, and slippers on a daily basis.

56.     Plaintiffs did not work at their own convenience, having to report to work according to their schedule(s) devised by Defendants. Furthermore, once scheduled for a shift, Plaintiffs did not come and go at their pleasure but rather was controlled by Defendants.

57.     Plaintiffs are non-exempt under FLSA and the NYLL. Among other things, Plaintiffs did not occupy what law would characterize as a "professional," "executive" or even "administrative" position(s), as Plaintiffs' employment for Defendants was physical labor.

58.     Plaintiffs commence this action under 29 U.S.C. § 216(b).

59.     Plaintiffs regularly handled goods in interstate commerce, such as produce and communication devices that produced outside of the State of New York.

60.     Plaintiffs' work duties required neither discretion nor independent judgment.

61.     During Plaintiffs' employment with Defendants, Plaintiffs worked at Defendants' nail salon(s), doing business as "Birch Hill Nails" (hereafter, referred to as "Birch Nails") located at 89 Birch Hill Rd, Locust Valley, NY 11560.

62.     Although Plaintiffs were hired as nail technician, Plaintiffs were required to spend over 30% of their shift for performing non-tipped duties at the will and pleasure of Defendant Jennifer to accomplish tasks as she saw fit from day to day.

63.     Upon information and belief, Birch Nails' official business hours are from 10:00 am to 7:00 pm on weekdays; and from 9:30 am to 6:00 pm on Saturdays. However, Plaintiffs were required to arrive approximately 20-30 minutes early in the morning and staye after the official business hours to clean up the business site and provide service to the customer(s) who walked in close to the end of its business hour(s).

64.     Throughout Plaintiffs' employment, Defendants calculated Plaintiffs' compensation at a fixed daily rate(s) and paid them in combination of cash and check on a weekly basis solely based on the number of days Plaintiffs worked, regardless of the number of hours Plaintiffs worked.

***Plaintiff Moon's Work Schedule***

65.     From on or about October 9, 2020 until July 30, 2022, Plaintiff Moon worked at Birch Nails located at 89 Birch Hill Rd, Locust Valley, NY 11560.

66.     In the beginning of Plaintiff Moon's employment until around the end of December 2020, she worked (4) days per week *generally* on Mondays, Wednesdays, and Fridays and Saturdays. During the weekdays, Plaintiff Moon worked approximately 9:50 am until 7:20 pm; and on Saturdays, her shift lasted from approximately 9:10 am until 7:20 pm. As such, Plaintiff

Moon worked approximately (9.5) hours to (10.2) hours per day or in total, (38.7) hours per week during this period.

67.     Since around the beginning of 2021 until around the end of December 2021, Defendants required Plaintiff Moon to work (1) additional day each week, for (5) days per week with *generally,* Tuesdays and Sundays off. During this period, Plaintiff Moon worked on the same schedule from approximately 9:50 am until 7:20 pm on weekdays; and from approximately 9:10 am until 7:20 pm on Saturdays, *except* for the period between July 2021 and August 2021.

68.     For the period between July 2021 and August 2021, Birch Nails performed renovations inside the business site. During that period, Defendants required Plaintiff Moon to arrive half an hour early in the morning on her scheduled workdays to clean up the renovation residues and arrange/re-arrange the location(s) of the furniture and business inventory until Plaintiff Moon's scheduled shift began.  As such, during this period, Plaintiff Moon worked (10) hours on weekdays for 4 days and (10.7) hours on Saturday or in total, (50.7) hours per week.

69.     From around the beginning of January 2022 until on or about June 16, 2022, Plaintiff Moon worked (4) days per week *generally* on Mondays, Wednesdays, and Fridays and Saturdays. During the weekdays, Plaintiff Moon worked approximately 9:50 am until 7:20 pm; and on Saturdays, her shift lasted from approximately 9:10 am until 7:20 pm. As such, Plaintiff Moon worked approximately (9.5) hours or (10.2) hours per day or in total, (38.7) hours per week during this period.

70.     Since or about June 17, 2022 until the last day of Plaintiff's Moon's employment on July 30, 2022, she worked (5) days per week with *generally,* Tuesdays and Sundays off, according to her regular working hours: from approximately 9:50 am until 7:20 pm on weekdays; and from approximately 9:10 am until 7:20 pm on Saturdays. During this period, Plaintiff Moon

worked approximately (9.5) hours per day for 4 weekdays and (10.2) hours on Saturday or in total, (48.2) hours per week.

***Plaintiff Moon's Pay***

71.     Throughout Plaintiff Moon's employment until around the 2nd week of June 2022, Defendant set Plaintiff's fixed daily compensation at $100.00 per day regardless of how many hours she actually worked.

72.     Thereafter, since around the 2nd week of June 2022 until July 30, 2022, Defendants increased Plaintiff Moon's fixed daily rate to $105.00 per day and paid her on a weekly basis.

***Plaintiffs Moon and Lee's Hostile Work Environment and Retaliation Claims***

73.     Birch Nails own(s), operate(s), or control(s) a nail salon located at 89 Birch Hill Rd, Locust Valley, NY 11560.

74.     Upon information and belief, Defendant Jennifer made her personnel and other decisions on behalf of Defendant Birch Nails.

75.     Upon information and belief, Defendant Jennifer had supervisory, hiring and firing authority over Plaintiffs Moon and Lee and other Birch Nails' employees.

76.     Defendant Jennifer conducted Plaintiffs' Moon and Lee's interview, and Plaintiffs was hired to work at Birch Nails as nail technician.

77.     Throughout the time Plaintiffs Moon and Lee performed work for Defendants at Birch Nails, they were under the direct supervision of Defendant Jennifer.

78.     During Plaintiffs Moon and Lee's employment, Defendant Jennifer did not allow Plaintiffs Moon and Lee to utilize the tools and the employees' protective items such as gloves or paper towels and required them to re-use the paper towels and disposable slippers after washing them by hand.

79.     Furthermore, Defendant Jennifer did not allow Plaintiffs Moon and Lee to turn on the air conditioner, specifically during the time period Birch Nails underwent re-modeling in the summer 2021, although Defendant Jennifer required Plaintiffs Moon and Lee to clean up the remodeling residue and re-arrange furniture/inventory in the nail salon. During the wintertime, Plaintiffs Moon and Lee worked without any heat at Birch Nails because Defendant Jennifer did not allow them to turn on the heater.

80.     During Plaintiff Moon and Lee's employment, Defendant Jennifer subjected Plaintiffs Moon and Lee to bitter comments and great humiliation and always acted angrily towards the Plaintiffs whenever Defendant Jennifer saw them in Birch Nails.

81.     Defendant Jennifer frequently "yelled" at Plaintiff Moon or Lee, "stop talking in Korean," when they were talking with other Birch Nails' Korean-speaking employee(s) to discuss work-related tasks.

82.     Throughout Plaintiffs Moon and Lee's employment at Birch Nails, Defendant Jennifer required either Plaintiff Lee or Plaintiff Moon (after Plaintiff Lee was forced to terminate) to perform more tasks than other nail-technician employees such as setting out trash, cleaning bathroom and waxing room including all the windows, vacuuming/mopping the floor, and lining up the nail salon's chairs evenly spaced distances, as if in the military.

***Instances specific to Plaintiff Moon***

83.     Since around March 2021, Defendant Jennifer became even "crankier" and started "intensely bothering" Plaintiff Moon without any reason or provocation.

84.     Since that time, Defendant Jennifer often made comments in front of Plaintiff Moon that, **"*younger employees are fast and that is why my daughter told me to hire a younger employee [than Plaintiff Moon].*"**

85.     When Defendant Jennifer required Plaintiff Moon to clean the floor, Defendant Jennifer asked, *"is this the floor that you actually cleaned?."*

86.     Whenever Plaintiff Moon tried to put disposable gloves on to handle the Birch Nails' trash, Defendant Jennifer penalized Plaintiff Moon that she was wasting the nail salon's gloves. On one occasion, Defendant Jennifer ***"slapped"*** Plaintiff Moon's back as Plaintiff Moon began wearing the gloves to dispose of the trash containing hazardous and unsanitary items.

87.     On multiple occasions, Defendant Jennifer sarcastically commented on Plaintiff Moon's facial expressions and the way of Plaintiff Moon's walking. When Plaintiff Moon was concentrating on her tasks, Defendant Jennifer pointed out Plaintiff's facial expression and told her, ***"why your face looks so angry?"*** and continuously commented, ***"I know you are angry, aren't you?"*** even after Plaintiff Moon told her that she was not angry and tried to not to escalate the situation.

88.     Defendant Jennifer also told Plaintiff Moon, ***"I know that your lips are pushed forward*** [behind her the face mask] ***because you are angry, aren't they?"*** although Plaintiff Moon wearing a mask for the entire time.

89.     One day, Defendant Jennifer observed Plaintiff Moon while she was walking, Defendant Jennifer sarcastically inquired, ***"why you walk wabbly and slow?"*** and eventually made Plaintiff Moon cry.

90.     On or around July 18, 2022, Defendant Jennifer required Plaintiff Moon to use the nail table close to Defendant Jennifer's table so that she could closely "monitor" Plaintiff Moon at the nail salon. Since that day, Defendant Jennifer constantly rushed Plaintiff Moon to perform her work faster by making repetitive inquires such as*, "are you done yet?," "how long will it take?,"*

and/or *"what's the status of your tasks?,"* although Defendant Jennifer assigned Plaintiff Moon to handle the nail salon's customer(s) who walked in after Plaintiff Moon's scheduled shift.

91.   Defendant Jennifer often blamed Plaintiff Moon whenever any of the gel-nail polish was out and yelled at Plaintiff Moon, "did **YOU** finish them already?" then, "why the gel-nails were gone so quickly?" although all of the Birch Nails' technicians shared the same bottles of gel nails to serve the Birch Nails' customers.

92.   As Defendant Jennifer's bitter comments and harassing conduct grew, Plaintiff Moon's stress level was increased. Eventually, Plaintiff Moon sought medical attention for the stress and learned that her glucose level had risen substantially.

93.   During Plaintiff Moon's employment, Defendants failed and refused to pay all the hours she worked and continuously paid her at a fixed daily rate(s). Plaintiff Moon complained to Defendant Jennifer, but she refused to pay all the hours Plaintiff Moon actually worked. Instead, Defendant Jennifer's harassing conduct continued to intensify every day.

94.   Almost every morning when Plaintiff Moon got ready to go to work, she started feeling knots in her stomach in anticipation of the start of her workday along with an overwhelming sense of feeling unwanted and abused.

95.   On July 30, 2022, Plaintiff Moon was finally forced to terminate her employment with Birch Nails since she could no longer endure Defendant Jennifer's bitter comments and harassing conduct.

### *Instances specific to Plaintiff Lee*

96.   Throughout Plaintiff Lee's employment, Defendants failed to pay all the hours Plaintiff Lee worked. Defendants constantly paid her at a fixed daily rate no more than $90.00 per day regardless of how many hours she actually worked.

97.    Around the time a former nail technician left her employment at Birch Nails on or around May 2021, she learned that Defendants had been paying her substantially less than the former employee. Plaintiff Lee complained to Defendant Jennifer about the Defendants' unfair pay practice, but Defendants still refused to pay all the hours Plaintiff Lee worked. Instead, Defendants began paying her $5.00 more per day.

98.    Since Defendants increased Plaintiff Lee's fixed daily rate, Defendant Jennifer started creating a hostile work environment. Plaintiff Lee had to suffer from Defendant Jennifer's unreasonable comments and was eventually treated as a "ghost."

99.    Specifically, since around the time that that the former nail technician left, Defendant Jennifer forced Plaintiff Lee to work longer hours without paying her any additional compensation.

100.    Plaintiff Lee was the one who was primarily responsible for cleaning the Birch Nails' bathroom. When Plaintiff Lee was working as a nail technician, Defendant Jennifer always rushed Plaintiff Lee to complete her work faster by continuously asking, "how far are you?," or "you should do your work well."

101.    While Plaintiff Lee was painting the customer's nails with gel manicure, Defendant Jennifer always commented to Plaintiff Lee that "you don't work well" and "just cannot do gel nails" in front of the customers and her co-workers. Although the customer said that she was satisfied with Plaintiff Lee's work, Defendant Jennifer would not stop making such degrading comments on Plaintiff Lee's work.

102.    Whenever Plaintiff Lee threw away the all-used-up nail file, Defendant Jennifer kept her eyes on Plaintiff Lee's actions and told her, "who throw away a nail file like that? Do you know how much it costs me to purchase nail files?."

16

103.    Defendant Jennifer did not allow Plaintiff Lee to take any rest break. Whenever Plaintiff Lee tried to take a little rest break, Defendant Jennifer "yelled" at Plaintiff Lee, "if there is no customers, you should clean the [disposable] slippers," "why don't you wash the used nail files (although there were plenty of them)," or "why don't you just do something."

104.    Plaintiff Lee was tired of the relentless work due to Defendant Jennifer's constant requests, but she had to endure the situation to sustain her job.

105.    Only to make Plaintiff Lee busier at work, Defendant Jennifer requested Plaintiff Lee to assist other nail technicians instead of assigning a customer to Plaintiff Lee. Plaintiff Lee was required to bring towels and deliver other nail inventory to her co-workers, including Defendant Jennifer, and had to clean the tables after her co-worker(s)'s customer would leave.

106.    As Plaintiff Lee continued to come to work at Birch Nails and complained to Defendant Jennifer about Defendants' unfair pay practice, Defendant Jennifer started treating Plaintiff Lee as a "ghost."

107.    For instance, whenever Plaintiff Lee had tried to ask Defendant Jennifer about her tasks and/or other work-related inquiry, Defendant Jennifer always showed her a hand-gesture as if Plaintiff Lee should "go away" without even looking at Plaintiff Lee. At some point, Defendant Jennifer completely stopped talking to Plaintiff Lee, never looked/smiled at her, and always showed her an angry face. One day, a customer noticed Defendant Jennifer's reaction toward Plaintiff Lee, and asked her why Defendant Jennifer was so angry at Plaintiff Lee. Plaintiff Lee felt humiliated but did not say anything.

108.    On or about December 24, 2021, Plaintiff Lee finally decided that she could no longer endure the excessive workload and the way that Defendant Jennifer treated her at work.

Since then, Plaintiff Lee was unable to return to work at Birch Nails and was constructively terminated.

***Plaintiff Lee's Work Schedule***

109.    From on or about April 3, 2018 until the last day of her employment on December 24, 2021, Plaintiff Lee worked at Birch Nails located at 89 Birch Hill Rd, Locust Valley, NY 11560.

110.    From on or about April 3, 2018 until around the end of December 2018, she *generally* worked (5) to (6) days per week with Monday off (e.g., 5 days of work when Defendant Jennifer called her in the morning and advised her not to show up).  During the weekdays, Plaintiff Lee worked approximately 9:50 am until 7:20 pm; and on Saturdays, her shift lasted from approximately 9:10 am until 7:20 pm. As such, Plaintiff Lee worked approximately (9.5) hours to (10.2) hours per day or in total, (48.2) hours per week (if she worked 5 days per week) or (57.2) hours per week (if she worked 6 days per week) during this period.

111.    From the beginning of 2019 until around March 15, 2020, Plaintiff Lee *generally* worked (4) to (5) days per week with Monday off and any other days Defendant Jennifer instructed not to show up at work in the morning. During the weekdays, Plaintiff Lee worked approximately 9:50 am until 7:20 pm; and on Saturdays, her shift lasted from approximately 9:10 am until 7:20 pm. As such, Plaintiff Lee worked approximately (9.5) hours to (10.2) hours per day or in total, (38.7) hours per week (if she worked 4 days per week) or (48.2) hours per week (if she worked 5 days per week) during this period.

112.    From March 16, 2020 until June 27, 2020, Plaintiff Lee did not work.

113.    Since around June 28, 2020 until around March 2021, Plaintiff Lee *generally* worked (2) to (4) days per week with Monday off and any other days Defendant Jennifer instructed

not to show up at work in the morning. During the weekdays, Plaintiff Lee worked approximately 9:50 am until 7:20 pm; and on Saturdays, her shift lasted from approximately 9:10 am until 7:20 pm. As such, Plaintiff Lee worked approximately (9.5) hours to (10.2) hours per day or in total between over (19) hours and (38) hours per week during this period.

114.    From in or around April 2021 until in or around October 2021, Plaintiff Lee *generally* worked (4) to (5) days per week with Monday off and any other days Defendant Jennifer instructed not to show up at work in the morning. During the weekdays, Plaintiff Lee worked approximately 9:50 am until 7:20 pm; and on Saturdays, her shift lasted from approximately 9:10 am until 7:20 pm (except for the period between July 2021 and August 2021) As such, Plaintiff Lee worked approximately (9.5) hours to (10.2) hours per day or in total, (38.7) hours per week (if she worked 4 days per week) or (48.2) hours per week (if she worked 5 days per week) during this period, except for the period between July 2021 and August 2021.

115.    For the period between July 2021 and August 2021, Birch Nails performed renovations inside the business site. During that period, Defendants required Plaintiff Lee to arrive half an hour early in the morning on her scheduled workdays to clean up the renovation residues and arrange/re-arrange the location(s) of the furniture and business inventory until Plaintiff Moon's scheduled shift began.  As such, during this period, Plaintiff Lee worked (10) hours on weekdays for 4 days and (10.7) hours on Saturdays or in total, (50.7) hours per week.

116.    Since around November 2021 until December 24, 2021, Plaintiff Lee worked (2) to (3) days per week. During the weekdays, Plaintiff Lee worked approximately 9:50 am until 7:20 pm; and on Saturdays, her shift lasted from approximately 9:10 am until 7:20 pm. As such, Plaintiff Lee worked approximately (9.5) hours to (10.2) hours per day or in total, between over (19) and (29) hours per week during this period.

***Plaintiff Lee's Pay***

117.    From the beginning of her employment until around July 2019, Defendant set Plaintiff Lee's fixed daily compensation at $80.00 per day regardless of how many hours she actually worked.

118.    Since around August 2019 until around the 2nd week of May 2021, Defendants increased Plaintiff Lee's fixed daily rate to $85.00 per day and paid her on weekly basis.

119.    Since on or around May 15, 2021 until December 24, 2021, Defendants paid Plaintiff Lee $5.00 more per day, and Plaintiff Lee received a fixed daily rate at $90.00 per day on a weekly basis regardless of how many hours she actually worked.

***Plaintiff Kim's Work Schedule***

120.    From on or about June 3, 2021 until July 28, 2022, Plaintiff Kim worked at Birch Nails located at 89 Birch Hill Rd, Locust Valley, NY 11560.

121.    In the beginning of Plaintiff Kim's employment until on or about June 6, 2022, she worked (4) days per week on Wednesdays, Thursdays, Fridays, and Saturdays. During the weekdays, Plaintiff Lee worked approximately 9:50 am until 7:20 pm; and on Saturdays, her shift lasted from approximately 9:10 am until 7:20 pm (except for the period between July 2021 and August 2021, when Birch Nails performed renovations). As such, Plaintiff Kim worked approximately (9.5) hours to (10.2) hours per day or in total, (38.7) hours per week during this period, except for the Birch Nails' renovation period.

122.    While Birch Nails were performing renovations from July 2021 to August 2021, Defendants required Plaintiff Kim to arrive half an hour early in the morning on her scheduled workdays to clean up the renovation residues and arrange/re-arrange the location(s) of the furniture and business inventory until Plaintiff Kim's scheduled shift began.  As such, during this period,

Plaintiff Kim worked (10) hours on weekdays for 3 days and (10.7) hours on Saturday or in total, (40.7) hours per week.

123.    Since on or about June 7, 2022 until July 28, 2022, Plaintiff Kim worked (5) days per week from Tuesday through Friday. During the weekdays, Plaintiff Kim worked approximately 9:50 am until 7:20 pm; and on Saturdays, her shift lasted from approximately 9:10 am until 7:20 pm. As such, Plaintiff Kim worked approximately (9.5) hours to (10.2) hours per day or in total, (48.2) hours per week during this period.

***Plaintiff Kim's Pay***

124.    From the beginning Plaintiff Kim's employment until around the 2nd week of April 2022, Defendant set Plaintiff Kim's fixed daily compensation at $100.00 per day regardless of how many hours she actually worked.

125.    Since around the 3rd week of April 2022 until July 28, 2022, Defendants increased Plaintiff Kim's fixed daily rate to $105.00 per day and paid her on weekly basis.

126.    Throughout Plaintiffs' employment, Defendants failed to keep accurate records of the number of hours Plaintiffs worked. Defendants did not require Plaintiffs to records at all until around May 2022. Since May 2022, Defendants equipped a computerized time clock system, but none of Defendants' time records reflected the actual hours Plaintiffs worked. Defendants always required Plaintiffs to clock-out around the end of official business hours even though Plaintiffs were still required to work after they clocked-out. While Plaintiffs were still performing their tasks, Defendant Jennifer walked to each of the Plaintiffs and presented the time recording device to clock-out and continue to work on their tasks until they were completed. As such, the time records were not an accurate representation of the hours Plaintiffs actually worked.

127.   Upon information and belief, Defendant Jennifer issued the paycheck on behalf of Birch Nails and delivered the check payment(s) to Birch Nails' employees, including Plaintiffs.

128.   Defendants calculated Plaintiffs Moon and Kim's wages based on a fixed rate(s) and paid them below the NYS minimum wage rate.

129.   Defendants paid calculated Plaintiffs Moon and Kim's wages based on a fixed rate(s) and paid them below the NYS minimum wage rate

130.   Throughout Plaintiff Lee's employment at Birch Nails, Defendants failed to pay Plaintiff Lee at least the minimum wage to which she is entitled under the FLSA.

131.   Defendants failed to pay Plaintiffs appropriate overtime compensation as required by federal and state laws when Defendants required them to work in excess of 40 hours a week.

132.   Defendants did not give any notice to Plaintiffs in English, and in their primary language, of their rate of pay, employer's regular pay day, and such other information as required by NYLL § 195(1).

133.   Defendants did not provide Plaintiffs an accurate statement of wages, as required by NYLL 195§ (3).

134.   Defendants did not pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowance for each day Plaintiffs spread of hours exceeded ten hours.

135.   Plaintiffs have been substantially damaged by Defendants' unlawful conduct.

## STATEMENT OF CLAIM

### COUNT I
**[Violations of the Fair Labor Standards Act—Minimum Wage
Brought on behalf of the Plaintiff Lee]**

136.   Plaintiffs repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

137.    At all times relevant, Plaintiff Lee was an "employee" within the meaning of 29 U.S.C. §§ 201 *et seq.*

138.    At all times relevant, Defendants have been employers of Plaintiff Lee and engaged in commerce and/or the production of goods for commerce, within the meaning of 29 U.S.C. §§ 201 *et seq.*

139.    Defendants have failed to pay Plaintiff Lee minimum wages which she is entitled under FLSA.

140.    Defendants' unlawful conduct, as described in this Complaint, has been willful and intentional. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful.

141.    Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff Lee.

142.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. §§ 201 *et seq.*

143.    Due to Defendants' willful violations of the FLSA, Plaintiff Lee has suffered damages by being denied minimum wage in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

**COUNT II**
**[Violations of the Fair Labor Standards Act—Overtime Wage**
**Brought on behalf of the Plaintiffs]**

144.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

145.     The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he or she is employed, or one and one-half times the minimum wage, whichever is greater. 29 USC § 207(a).

146.     The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 USC § 216(b).

147.     Defendants have failed to pay Plaintiffs premium overtime wages to which they are entitled under the FLSA at the rate of time and one-half for all hours worked in excess of 40 hours per week.

148.     Defendants' unlawful conduct, as described in this Complaint, has been willful and intentional. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful.

149.     Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs.

150.     Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. §§ 201 *et seq.*

151.     As a result of Defendants' willful violations of the FLSA, Plaintiffs have suffered damages by being premium overtime wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

**COUNT III**
**[Violation of New York Labor Law—Minimum Wage**
**Brought on behalf of Plaintiffs]**

152.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

153.    Defendants have engaged in a widespread pattern, policy, and practice of violating the NYLL, as detailed in this Complaint.

154.    At all times relevant, Plaintiffs have each been an employee of Defendants, and Defendants have been employers of Plaintiffs within the meaning of the NYLL §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

155.    Defendants have failed to pay Plaintiffs the minimum wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

156.    Through their knowing or intentional failure to pay minimum hourly wages to plaintiffs, Defendants have willfully violated the NYLL, Article 19, NYLL §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

157.    Due to Defendants' willful violations of the NYLL, Plaintiffs are entitled to recover from Defendants unpaid minimum wages and liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

**COUNT IV**
**[Violation of New York Labor Law—Overtime Pay**
**Brought on behalf of Plaintiffs]**

158.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

159.    Defendants have engaged in a widespread pattern, policy, and practice of violating the NYLL, as detailed in this Complaint.

160.     Defendants have failed to pay Plaintiffs premium overtime wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations at the rate of time and one half for all hours worked in excess of 40 hours per week.

161.     Through their knowing or intentional failure to pay minimum hourly wages to Plaintiffs, Defendants have willfully violated the NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

162.     Due to Defendants' willful violations of the NYLL, Plaintiffs are entitled to recover from Defendants unpaid overtime wages and liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

**COUNT V**
**[Violation of New York Labor Law—Spread of Hour Pay**
**Brought on behalf of Plaintiffs]**

163.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

164.     Defendants regularly and knowingly required Plaintiffs to be at work for a spread of hours equal to, or greater than, ten (10) hours per day, specifically when Plaintiffs were required work on Saturdays.

165.     Defendants knowingly, willfully, and intentionally failed to pay Plaintiffs one extra hour's pay at the basic minimum wage for every day on Saturday in which the interval between Plaintiffs' start and end times exceeded ten hours, in violation of New York State labor regulations. N.Y. Comp. Codes R. & Regs. tit. 12, §§ 142-2.4.

166.     Because of Defendants' willful violation of the NYLL, Plaintiffs are entitled to recover from Defendants, jointly and severally, their unpaid wages originating from the spread of

hours provision, liquidated damages, as well as reasonable attorneys' fees and costs of the action, including pre-judgment interest, all in an amount to be determined at trial.

**COUNT VI**
**[Violation of New York Labor Law—Wage Notices**
**Brought on behalf of Plaintiffs]**

167.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

168.    Defendants have willfully failed to supply Plaintiffs with a wage notices, as required by NYLL, Article 6, §195(1),  in English, or in the language identified by Plaintiffs as their primary language, containing Plaintiff's rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL, Article 6, §191;  the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner has deemed material and necessary.

169.    Through their knowing or intentional failure to provide Plaintiffs with the wage notices required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§190 *et seq*., and the supporting New York State Department of Labor Regulations.

170.    Due to defendants' violation of NYLL § 195(1), Plaintiffs are entitled to recover from Defendants liquidated damages $5,000, plus reasonable attorney's fees, and costs and disbursements of the action, pursuant to the NYLL §198(1-d).

**COUNT VII**
**[Violation of New York Labor Law—Wage Statements**
**Brought on behalf of Plaintiffs]**

171.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

172.     Defendants have willfully failed to supply Plaintiffs with accurate statements of wages as required by NYLL, Article 6, §195(3), containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

173.     Through their knowing or intentional failure to provide Plaintiffs with the accurate wage statements required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 *et seq.*, and the supporting New York State Department of Labor Regulations.

174.     Due to Defendants' violation of NYLL §195(3), Plaintiffs are entitled to recover from the Defendants liquidated damages of $5,000, plus reasonable attorney's fees, and costs and disbursements of the action, pursuant to the NYLL § 198-1(d).

**COUNT VIII**
**[Violation of the New York State Human Rights Law - Hostile Work Environment**
**Brought by Plaintiffs Moon and Lee]**

175.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

176.     Plaintiffs Moon and Lee re qualified to work as an employee for Defendants and they have satisfactorily performed the duties required by the position they held at Birch Nails.

177.     Throughout the time Plaintiffs Moon and Lee performed work for Defendants at

Birch Nails, they were under the direct supervision of Defendant Jennifer.

178.    During Plaintiff Moon and Lee's employment, Defendant Jennifer subjected Plaintiffs Moon and Lee to bitter comments and great humiliation and always acted angrily towards the Plaintiffs whenever Defendant Jennifer saw them in Birch Nails. *See paragraphs, 73-108.*

179.    Additionally, Defendant Jennifer subjected Plaintiff Moon to repeated insults and degrading comments to humiliate Plaintiff Moon in front of coworkers and customers by making baseless personal attacks on Plaintiff Moon appearance, way of walking, and work ethic. *See paragraphs 83-95.*

180.    Plaintiff Moon was threatened with replacement by a younger employee and ever pending termination unless she continuously worked "faster" and fully complied with Defendant Jennifer's unreasonable demand. *See paragraphs 84-90.*

181.    Similarly, Plaintiff Lee had to suffer from Defendant Jennifer's unreasonable comments and was eventually treated as a "ghost." *See paragraphs 96-108.*

182.    Defendants knowingly allowed the hostile work environment to persist without any attempt to intervene or correct Defendant Jennifer's conduct.

183.    Upon information and belief, the shareholder(s) and director(s), president(s) and/or principal(s) of Birch Nails made his or her personnel and other decisions in consultation with Defendant Jennifer who served as an "owner(s)," and/or founder(s) of Birch Nails.

184.    Defendant Birch Nails failed to take adequate measures to remedy the harassment suffered by Plaintiffs Moon and Lee. Instead, Defendant Birch Nails required the Plaintiffs to perform increased duties and work longer hours to satisfy Defendant Jennifer's demands at Birch Nails.

185.    Defendants engaged in a course of unlawful conduct, as stated above, which created a hostile work environment in violation of the New York State Human Rights Law (NYSHRL). N.Y. Executive Law Art. 15 §§ 290-301.

186.    As a direct and proximate result of Defendants' unlawful employment practices, Plaintiffs Moon and Lee suffered the indignity of harassment, the invasion of their rights to be free from harassment which have manifested in emotional distress, as well as physical distress as to Plaintiff Moon.

187.    As a further direct proximate result of Defendants' unlawful employment practices, Plaintiffs Moon and Lee suffered extreme mental anguish, outrage, severe anxiety, painful embarrassment among their co-workers and Birch Nails' customers, and the loss of enjoyment of the ordinary pleasures of everyday life.

188.    Defendants' conduct was done in conscious disregard of Plaintiffs Moon and Lee's rights.

189.    Plaintiffs Moon and Lee therefore seek compensatory damages, emotional and physical damages (as to Plaintiff Moon), reasonable attorneys' fees, the costs and disbursements of this action, punitive damages, interest, and any other damages permitted by law in an amount to be determined at trial.

**COUNT X**
**[Violation of the New York Labor Law - Retaliation**
**Brought by Plaintiffs Moon and Lee]**

190.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

191.    NYLL § 215 prohibits an employer from terminating or disciplining an employee because "such employee has made a complaint to his or her employer, or to the commissioner or

his or her authorized representative, or to the attorney general or any other person, that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter."

192.    After Plaintiff Moon complained to Defendant Jennifer, but she refused to pay all the hours Plaintiff Moon actually worked. Instead, Defendant Jennifer's harassing conduct continued to intensify every day e.g., threatening to replace her with younger employee, slapping Plaintiff Moon's back as she began wearing the gloves before disposing the trash, commenting on her facial expression and the way of "wabbly" walking. *See paragraphs 73-95.*

193.    After complaining of not receiving proper wages and overtime pay, Plaintiff Lee had to suffer from Defendant Jennifer's unreasonable comments and was eventually treated as a "ghost." *See paragraphs 73-82; 96-108.*

194.    Plaintiff Lee was tired of the relentless work due to Defendant Jennifer's constant requests, but she had to endure the situation to sustain her job.

195.    All which culminated in the constructive discharge of Plaintiff Moon and Lee from employment due to the continuous harassing and retaliatory conduct of Defendants.

196.    Defendants knowingly allowed the conduct to persist without any attempt to intervene or correct Defendant Jennifer's conduct.

197.    In committing the above-mentioned retaliatory acts, Defendants forced Plaintiffs Moon and Lee's discharge, and retaliated against Plaintiffs Moon and Lee for making complaints that Defendants violated the NYLL.

198.    As a direct and proximate result of Defendants unlawful conduct, as set forth herein, Plaintiffs Moon and Lee sustained damages and seek recovery for retaliation in an amount to be determined at trial, attorneys' fees, costs, liquidated damages and prejudgment interest as provided

by NYLL § 215 and supporting regulations, and such other legal and equitable relief as this Court deems just and proper.

### **Prayer for Relief**

WHEREFORE, Plaintiffs request that this Court enter a judgment:

a)      Declaring that Defendants have violated the minimum wage, overtime pay of the FLSA, and supporting United States Department of Labor Regulations;

b)      declaring that Defendants have violated the minimum wage, overtime pay provisions of the NYLL, and supporting regulations;

c)      declaring that Defendants have violated the Wage Theft Prevent Act;

d)      declaring that Defendants have violated the Spread of Hours law;

e)      declaring that Defendants' violations of the FLSA were willful;

f)      declaring that Defendants' violations of the NYLL were willful;

g)      declaring Defendants violated the NYLL, as well as the New York Executive Law as to Plaintiffs Moon and Lee;

h)      granting judgment to Plaintiffs Moon and Lee on their NYSHRL claims and awarding Plaintiffs Moon and Lee appropriate damages and fines and penalties as provided for by statute;

i)      awarding Plaintiffs damages for all unpaid wages;

j)      awarding Plaintiffs liquidated damages in an amount equal to the total amount of the wages found to be due, pursuant to the FLSA and the NYLL;

k)      awarding damages of $5,000, plus reasonable attorney's fees, and costs and disbursements of the action, as provided for by NYLL, Article 6 §198;

l)      awarding plaintiff liquidated damages of $5,000, plus reasonable attorney's fees, and costs and disbursements of the action, as provided for by NYLL, Article 6 §198;

m)      issuing a declaratory judgment that the practices complained of in this Complaint are unlawful under the NYLL, Article 6, §§ 190 *et seq.*, NYLL, Article 19, §§ *et seq.*, and the supporting New York State Department of Labor Regulations;

n)      awarding Plaintiffs pre-judgment and post-judgment interest under the FLSA and the NYLL;

o)      granting an injunction requiring Defendants to pay all statutorily required wages and cease the unlawful activity described herein pursuant to the NYLL;

p)      awarding plaintiff reasonable attorneys fees' and costs pursuant the FLSA and the NYLL; and

q)      awarding such other and further relief as the Court deems just and proper.

### <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.

Dated:  Flushing, New York           **SEO LAW GROUP, PLLC**
        September 9, 2022

                                   By:    <u>/s/ Diana Seo</u>
                                       Diana Seo, Esq.
                                       136-68 Roosevelt Ave., Suite 726
                                       Flushing, New York 11354
                                       Telephone: (718) 500-3340
                                       Email: diana@seolawgroup.com
                                       *Attorneys for Plaintiffs*

**NOTICE OF INTENTION TO ENFORCE SHAREHOLDER LIABILITY**
**FOR SERVICES RENDERED**

To: Young Suk Kim

PLEASE TAKE NOTICE, that pursuant to the provisions of Section 630 of the Business Corporation Law of New York, you are hereby notified that Sinae Moon, Jeonghee Lee, and Hyun S. Kim, intend to charge you and hold you personally liable, jointly and severally, as one of the ten largest shareholders of Birch Nails & Spa Inc for all debts, wages, and/or salaries due and owing to them as laborers, servants and/or employees of the said corporations for services performed by them or the said corporations within the six (6) years preceding the date of this notice and have expressly authorized the undersigned, as their attorney, to make this demand on their behalf.

Dated: September 9, 2022

**NOTICE OF INTENTION TO ENFORCE SHAREHOLDER LIABILITY**
**FOR SERVICES RENDERED**

To: Young Suk Kim

  PLEASE TAKE NOTICE, that pursuant to the provisions of Section 630 of the Business Corporation Law of New York, you are hereby notified that Sinae Moon, Jeonghee Lee, and Hyun S. Kim intend to charge you and hold you personally liable, jointly and severally, as one of the ten largest shareholders of Birch Hill Nails, Inc. for all debts, wages, and/or salaries due and owing to them as laborers, servants and/or employees of the said corporations for services performed by them or the said corporations within the six (6) years preceding the date of this notice and have expressly authorized the undersigned, as their attorney, to make this demand on their behalf.

  Dated: September 9, 2022

**DEMAND BY EMPLOYEES TO INSPECT BOOKS, RECORDS, AND MINUTES PURSUANT TO SECTION 624 OF THE NEW YORK STATE BUSINESS CORPORATION LAW**

TO:

    Birch Nails & Spa Inc
    89 Birch Hill Rd.
    Locust Valley, NY 11560

    PLEASE TAKE NOTICE, that Sinae Moon, Jeonghee Lee, and Hyun S. Kim pursuant to the provisions of Section 630 of the Business Corporation Law of New York, payment of debts, wages and/or salaries due and owing to them as laborers, servants and/or employees of the above corporations for services performed by them for the above corporations within the six (6) years preceding the date of this notice from the ten largest shareholders of the above corporations, and who have expressly authorized the undersigned, as their attorney, to make this demand on their behalf.

    To the extent that the above corporation keeps and maintains the predecessor corporation(s)' archival records, they are subject to this request and must not be destroyed.

    HEREBY DEMAND the right to examine, in person or by agent or attorney, during usual business hours, the minutes of the proceedings of the shareholders and records of shareholders of the above corporations and to make extracts there from on or after five (5) days from receipt of this notice.

    Dated: September 9, 2022

**DEMAND BY EMPLOYEES TO INSPECT BOOKS, RECORDS, AND
MINUTES PURSUANT TO SECTION 624 OF THE NEW YORK STATE
BUSINESS CORPORATION LAW**

TO:

     Birch Hill Nails, Inc.
     89 Birch Hill Rd.
     Locust Valley, NY 11560

     PLEASE TAKE NOTICE, that Sinae Moon, Jeonghee Lee, and Hyun S. Kim, pursuant to the provisions of Section 630 of the Business Corporation Law of New York, payment of debts, wages and/or salaries due and owing to them as laborers, servants and/or employees of the above corporations for services performed by them for the above corporations within the six (6) years preceding the date of this notice from the ten largest shareholders of the above corporations, and who have expressly authorized the undersigned, as their attorney, to make this demand on their behalf.

     To the extent that the above corporation keeps and maintains the predecessor corporation(s)' archival records, they are subject to this request and must not be destroyed.

     HEREBY DEMAND the right to examine, in person or by agent or attorney, during usual business hours, the minutes of the proceedings of the shareholders and records of shareholders of the above corporations and to make extracts there from on or after five (5) days from receipt of this notice.

     Dated: September 9, 2022

## <u>DEMAND TO PRESERVE EVIDENCE</u>

Defendants are hereby directed to preserve all physical and electronic information pertaining in any way to Plaintiffs' employment, to Plaintiffs' causes of action and/or prayers for relief, and to any defenses to same, including, but not limited to, electronic data storage, closed circuit TV footage, digital images, computer images, cache memory, searchable data, computer databases, emails, spread sheets, employment files, memos, text messages, any and all online social or work related websites, entries on social networking sites (including, but not limited to, Facebook, Twitter, MySpace, etc.), and any other information and/or data and/or things and/or documents which may be relevant to any claim or defense in this litigation.

Dated: September 9, 2022

**EXHIBIT 1**

## CONSENT TO SUE
## UNDER FEDERAL FAIR LABOR STANDARDS ACT

     I am an employee currently or formerly employed by _Birch Hill Nails, INC_
and/or related entities. I consent to be a plaintiff in an action to collect unpaid wages. I agree that
I am bound by the terms of the Continent Fee retainer signed by the named plaintiff in this case.

_Gin Ae Moon_

Full Legal Name (Print)

Signature

_8/8/22_

Date

**EXHIBIT 2**

## CONSENT TO SUE
## UNDER FEDERAL FAIR LABOR STANDARDS ACT

I am an employee currently or formerly employed by _Birch Hill Nails, INC_
and/or related entities. I consent to be a plaintiff in an action to collect unpaid wages. I agree that
I am bound by the terms of the Continent Fee retainer signed by the named plaintiff in this case.

Jeonghee Lee
_____
Full Legal Name (Print)

_____
Signature

8/8/22
_____
Date

**EXHIBIT 3**

## CONSENT TO SUE
## UNDER FEDERAL FAIR LABOR STANDARDS ACT

I am an employee currently or formerly employed by Birch Hill Nails and/or related entities. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Continent Fee retainer signed by the named plaintiff in this case. Inc.

HYUN SOOK. Kim
Full Legal Name (Print)

Signature

8/8/2022
Date